AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br><br>INFORMATION ASSOCIATED WITH GMAIL ACCOUNT MATTHEW.RENATO.WALSH@GMAIL.COM THAT IS STORED AT A PREMISES CONTROLLED BY GOOGLE | )<br>)<br>)   Case No. 21-MJ -40<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

located in the _____Middle_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 875(c) | Making Threats in Interstate Commerce |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Ryan Marten*
_____
*Applicant's signature*

Ryan A. Marten, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____Telephone_____ *(specify reliable electronic means)*.

Date:  _____04/09/2021_____

_____
*Judge's signature*

City and state:  Baton Rouge, Louisiana

Magistrate Judge Richard L. Bourgeois
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT MATTHEW.RENATO.WALSH@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. 21-MJ- 40 **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ryan Anthony Marten, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California 94043.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigations ("FBI") and have been since September 2019. I am currently assigned to the FBI New Orleans Field Office at the Baton Rouge Resident Agency in Louisiana. Currently, I am working on the Baton Rouge

Western Hemisphere TOC Task Force investigating drug trafficking organizations and other violent crimes in the Baton Rouge area and nationwide. I have conducted investigations of, among other offenses, murder for hire involving interstate communications. As a federal agent, I am authorized to investigate violations of federal law, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 875(c) have been committed by **MATTHEW WALSH a/k/a MATTHEW RENATO WALSH** ("**WALSH**"). There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction," as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.     On or about March 10, 2021, federal agents were on the main campus of Louisiana State University ("LSU") in Baton Rouge, Louisiana, for the purpose of making contact with an individual unrelated to the instant investigation. On that date, while outside of

2

Patrick Taylor Hall on LSU's campus, FBI Special Agent ("SA") John McCarthy and another government employee were approached by an individual who identified himself as **WALSH**. **WALSH** engaged SA McCarthy in conversation, during which **WALSH** expressed his desire to join the military and referenced his expertise in petroleum engineering, specifically hydraulics, and molecules.

7.    Subsequent to this interaction, SA McCarthy discussed the contact with FBI SA Dustin Henry, and the two agents agreed to initiate a second contact with **WALSH**, in order to further discuss **WALSH**'s stated interest and expertise.

8.    On or about March 15, 2021, SA McCarthy observed **WALSH** to be present in his office, which was located on the third floor of Patrick Taylor Hall on LSU's campus. The office space was further verified as being **WALSH**'s office by the presence of a nameplate bearing **WALSH**'s name on the office door. SA McCarthy telephonically contacted SA Henry and advised that **WALSH** was currently present in his office, providing an opportunity for the two agents to speak to **WALSH**. Shortly thereafter, SA Henry arrived on campus. As SA Henry approached Patrick Taylor Hall, he observed an individual matching **WALSH**'s known description outside the building. SA Henry's knowledge of **WALSH**'s description was based on a review of **WALSH**'s driver's license and a description provided by SA McCarthy following SA McCarthy's in-person contact with **WALSH** on March 10, 2021. Upon identifying the individual as **WALSH**, SA Henry decided to approach **WALSH** outside of Patrick Taylor Hall.

9.    During this interaction, SA Henry asked **WALSH** if he was "Matt Walsh," in response to which **WALSH** confirmed that he was. SA Henry told **WALSH** that he was coming to see him, introduced himself by first and last name, produced his FBI credentials and identified himself as an FBI agent. According to SA Henry, **WALSH** reacted to SA Henry's credentials

3

with a grimace, appearing somewhat incredulous. SA Henry assured **WALSH** that he was not in trouble and told **WALSH** that he had met with the other government employee, who, along with SA McCarthy, had previously been approached by **WALSH**. SA Henry told **WALSH** that he wanted to "pick his brain." **WALSH** asked SA Henry if he wanted to buy him lunch, to which SA Henry replied not right now. **WALSH** told SA Henry if he wanted to talk, **WALSH**'s time was worth something and it would cost SA Henry to speak with **WALSH**. SA Henry thanked **WALSH** for his time and walked away.

10.     On March 15, 2021, at approximately 3:07 p.m. Eastern Time, **WALSH** called the FBI National Threat Operations Center ("NTOC") to both report, and acquire information regarding an individual who claimed to be an FBI agent when he approached **WALSH** on LSU's main campus in Baton Rouge, Louisiana.

11.     During this call to NTOC, **WALSH** provided his accurate first and last name, date of birth (XX/XX/1980), cellular telephone number (985-415-XXXX), and a zip code local to Baton Rouge, Louisiana. In addition, **WALSH** provided the following information regarding the referenced encounter from his perspective: **WALSH** was walking out of work when he was approached on the sidewalk by someone claiming to be a federal agent. The man "flashed a badge," introduced himself as "Dustin," referenced having talked to another government employee, told **WALSH** he was "not in trouble," and asked if he could "pick [**WALSH**'s] brain." When **WALSH** told the man that he could buy him lunch if he wanted to talk, "Dustin" declined and left on foot. **WALSH** expressed concern as to why he would be approached by the FBI and advised NTOC that he was "a patriot" and would "gladly talk" to the FBI "if there's a reason" that the FBI wants to talk to him.

12.     During **WALSH**'s call to NTOC, he did not acknowledge his March 10, 2021, interaction with SA McCarthy and the other government employee.

13.     On March 24, 2021, Complainant 1 (protected identity) contacted NTOC and advised that **WALSH** had sent Complainant 2 (protected identity) an email on March 24, 2021, at approximately 1:13 a.m. MDT. Complainant 1 advised NTOC of the nature of the relationship between **WALSH** and Complainants 1 and 2 and further advised that Complainants 1 and 2 reside outside the State of Louisiana. Complainant 1 further stated that **WALSH** often sent emails but described the referenced email communications as being "completely out of character" for **WALSH**. In addition to the primary email, on which Complainant 2 was an intended recipient, additional emails appeared in the same email chain. During this call, Complainant 1 quoted directly from the email communications, noted a reference by **WALSH** to the FBI having "the audacity to come after Matthew Walsh," and expressed concern that **WALSH** "was going to do something to the FBI." Complainant 1 provided NTOC with **WALSH**'s full name and email address (matthew.renato.walsh@gmail.com). Complainant 1 further advised that **WALSH** has a Ph.D. in Hydraulic Engineering and, as of the time of the call on March 24, 2021, was employed as a professor in Baton Rouge, Louisiana.

14.     Continuing on March 24, 2021, the FBI subsequently obtained a copy of the email chain referenced in Complainant 1's call to NTOC. The primary email, of which Complainant 2 was one of approximately 51 recipients, was sent from matthew.renato.walsh@gmail.com, and stated, in full:

SO YOU ALL KNOW
THE FBI INTIMIDATED ME
THEY THREATENED ME
I THREATEN THE BACK

5

I WILL CUT YOUR BALLS OFF AND FEED THEM TO THE FLOWERS AND SLIT
YOUR BABY OUT OF YOUR PREGNANTS WIFE BELLY AND WATER THE
FLOWERS WITH YOUR FAGGOT SON'S BLOOD

DO YOU HEAR ME FBI

I WILL FOREVER KILL YOU

YOU HAVE NO RIGHT TO DRAW BREATH FBI

COME AFTER ME ON A SIDEWALK

YOU COWARD TRAITOR

I WILL CUT YOUR BALLS OFF AND FEED IT TO THE FLOWERS

YOU LET DOMESTIC TERRORISTS GO ALL SUMMER

YOU CHEER FOR ANTIFI AND COMMUNIST BLM

AND YOU CRACK DOWN ON ONE SINGLE ILL-ADVISED EVENT ON THE
CAPITOL

YOU SHOULD ALL TAKE A CHEESE GRATER TO YOUR FACE

[PERSON A] AND [PERSON B] IF YOU DONT SEE IT AFTER ALL THIS I
DONT KNOW WHAT TO SAY

THE DEMOCRAT PARTY IS PURE EVIL

FOR EVER AND FOR ALWAYS

I AM DONE

I WONT GIVE YOU ANY MORE OF MY INSIGHT

GO FUCK YOURSELF

15.    Another email, within the same email chain, sent from

matthew.renato.walsh@gmail.com, on March 24, 2021, at approximately 1:45 a.m., states:

YOU ARE WELCOME

THANK ME WHEN YOU WANT

IDIOTS STORMED THE CAPITOL

THEY WERE TERRIBLE

BUT FOR ALL SUMMER

16.     Another email, within the same email chain, sent from

matthew.renato.walsh@gmail.com, on March 24, 2021, at approximately 2:04 a.m., states:

DOMESTIC TERRORISTS ALL SUMMER

THAT HAPPENED

AND THE FBI HAS THE AUDACITY TO COME AFTER MATTHEW WALSH

COME AFTER ME

I WILL KILL YOUR FAMILY

PUT IT IN WRITING

MATTHEW RENATO WALSH

INTIMIDATE ME

SEE WHAT HAPPENS

17.     In the course of the investigation, the FBI obtained copies of additional emails,

also sent from matthew.renato.walsh@gmail.com, during the early morning hours on March 24,

2021. The primary email message contained in this email chain was sent on March 24, 2021, at

approximately 2:10:42 MDT, and indicates several common recipients with the above-referenced

email communications provided by Complainant 1. One email within this chain, sent on March

24, 2021, at approximately 2:24 a.m., states:

THE FBI

THEY THREATEN "WHITE SUPREMACISTS"

THEY LET A WHOLE SUMMER OF BLM AND ANTIFA GO

PICK YOUR BATTLE

I WILL NOT BE INTIMIDATED

WHOEVER CAME AFTER ME HAS A THROAT TO BE SLIT AND A BLOOD TO

BE BLED ON A SIDEWALK

PUT IT IN WRITING

MATTHEW RENATO WALSH

PUT IT ON THE CHEVRON SERVER CUNT

FBI: YOU COME AFTER LOSERS WHO STORM THE CAPITOL LIKE ASSHOLES. GOOD FOR YOU. THOSE PPL NEED TO BE PUNISHED BUT YOU DO NOTHING ABOUT THE BLACK LIVES MATTER AND ANTIFI DOMMESTIC TERRORISTS WHO OVERRAN FEDERAL COURTHOUSES ND LOOTED AND BURNED ALL SUMMER

SHAME ON YOU

TAKE A CHEESE GRATER TO YOUR FACE

ALSO [PERSON C] SUPPORTED BLACK LIVES MATTER

HER IS A SUPPORTER OF DOMESTIC TERRORISM

[PERSON C] SUPPORTS DOMESTIC TERRORISM

18.    Another email, within the same email chain, sent from

matthew.renato.walsh@gmail.com, on March 24, 2021, at approximately 2:28 a.m., states:

BUT I NEVER FUCKING SAID I WOULD KILL [PERSON D]

SHOW ME PROOF SPOOK COWARD TRAITOR FBI?

YOU FABRICATE WHITE SUPREMACY IN ATLANTA

AND IGNORE MUSLIM BARBARISM IN BOULDER

FUCK YOU

COWARD TRAITOR FBI COMMUNIST SPOOK

COME FOR MATT WALSH AND DIE

19.    Another email, within the same email chain, sent from

matthew.renato.walsh@gmail.com, on March 24, 2021, at approximately 2:31 a.m., states:

AN FBI MAN CAME AT ME

SHOW ME WHEN I SAID ANYTHING WORTHY OF THAT

I WILL BEG FOR APOLOGY ON ME KNEES

I REALLY WILL

YOU COWARD TRAITORS

GO SOLVE A CRIME YOU FUCKING LOSERS

20.     Another email, within the same email chain, sent from matthew.renato.walsh@gmail.com, on March 24, 2021, at approximately 2:41 a.m., states:

> I KNEEL BEFORE NO MAN
> CAME AT MATT WALSH ON THE SIDEWALK SPOOK COMMIE
> YOU FUCKING CLOWN
> I WILL SLIT YOUR THROAT AND WATCH YOU BLEED OUT
> THAT IS A PROMISE

21.     In the course of the investigation, the FBI obtained a copy of an information report from Colorado School of Mines, Mines Police Department Officer Christopher Boyd. The report is under Case No. 21-0071, reported on March 24, 2021, at 02:35 hours (local time in Golden, Colorado). Therein, Officer Boyd states that he received a telephone call from a male who identified himself as Matthew Walsh and provided the same date of birth **WALSH** had previously provided to NTOC on March 15, 2021. The report also identifies the caller's email address as matthew.renato.walsh@gmail.com. Among other statements, the caller, believed to be **WALSH**, reportedly told Officer Boyd that he had sent an email saying a lot of things he regretted and deleted the email the next morning. Later in the call, **WALSH** reportedly told Officer Boyd that it would be hard to prove that he wasn't threatening people when he had just sent out another email about his frustrations. **WALSH** reportedly told Officer Boyd that he knew he should not contact others about his frustrations but that he had gotten intoxicated and sent out the email. When Officer Boyd inquired about that email, **WALSH** offered to, and did, send Officer Boyd a copy of the email. This email chain contained the email communications referenced in Paragraphs 17, 18, 19, and 20, above.

22.     In the course of the investigation, the FBI also learned through Colorado School of Mines, Mines Police Department Chief of Police Dustin Olson, that **WALSH** is an alumnus of

Colorado School of Mines and has transmitted additional threatening communications, via voicemails and email communications, to various individuals associated with the Colorado School of Mines. According to Chief Olson, among other communications, **WALSH** sent a series of emails, some of which contained threatening language, during the early morning hours of March 17, 2021, all of which were also sent from matthew.renato.walsh@gmail.com.

23.     In the course of the investigation, the FBI learned from a source personally familiar with and close to **WALSH** that **WALSH**'s escalating threats and related behavior began after **WALSH**'s employment with Chevron Corporation was terminated in or around July 2020. The same source believed that, beginning in or around January 2021, **WALSH** was using methamphetamine and abusing alcohol.

24.     **WALSH** was arrested by the St. Tammany Parish Sheriff's Office on December 10, 2020. According to the arrest report, **WALSH** was arrested for disturbing the peace and resisting an officer. Per the report, after **WALSH** was seen hitting the ground with a tennis racket while yelling in the parking lot of his apartment complex, **WALSH** proceeded to shout at and follow a female resident around the complex. Per the report, a witness described **WALSH** as seemingly "drunk and out of his mind." The same witness reportedly advised law enforcement that the female resident appeared "terrified" by **WALSH**'s actions. During the interaction with St. Tammany Parish Sheriff's deputies, **WALSH** disregarded verbal commands and fled from law enforcement before being apprehended and arrested. The FBI learned that, following this incident, **WALSH** was evicted from the apartment complex.

25.     In the course of the investigation, the FBI has learned that **WALSH** checked into InTown Suites, Extended Stay Hotel, in Baton Rouge, where he is believed to have resided from on or about December 17, 2020, through on or about February 24, 2021.

10

26.     Through LSU, the FBI has learned that **WALSH** was assigned a laptop, believed to be a Microsoft Surface Pro, in connection with his employment with LSU, beginning in or around January 2021, and continuing through on or about March 25, 2021.

27.     A preservation request, pertaining to Google Account matthew.renato.walsh@gmail.com was sent to Google on March 25, 2021, with Google Reference Number 5562337.

28.     In response to an order pursuant to 18 U.S.C. § 2703(d), dated March 31, 2021, Google provided subscriber information relevant to the target account, which confirmed that Google Account ID 95836682490 (an internal Google identifier for the Account) is assigned to "Matthew Walsh," same date of birth previously provided by **WALSH** to both NTOC and the Mines Police Department, and email address matthew.renato.walsh@gmail.com. The Account associated a recovery email address, mrwalsh150@gmail.com, and a recovery SMS, +1985415XXXX [US] (the same mobile telephone number previously provided by **WALSH**). The account was created on October 17, 2011, and as of April 2, 2021, the Account status was "enabled," according to Google's response to the § 2703(d) order.

29.     Also in response to the order pursuant to 18 U.S.C. § 2703(d), Google indicated that **WALSH**'s Google Account uses the following services:  Gmail, Google Hangouts, iGoogle, Google Drive, YouTube, Google Services, Blogger, Google Calendar, Google Docs, Google Photos, Google Maps Engine, Google Chrome Sync, Google Play Music, Google My Maps, Google Voice, Android, Location History, Scholar Profiles, Google Play, Geo Madden, Google Payments, and Google Keep.

## **BACKGROUND CONCERNING GOOGLE**[1]

30.     Google is a United States company that offers to the public through its Google

Accounts a variety of online services, including email, cloud storage, digital payments, and

productivity applications, which can be accessed through a web browser or mobile applications.

Among other free services, Google also offers to anyone, whether or not they have a Google

Account, a free web browser called Google Chrome, a free search engine called Google Search,

free video streaming called YouTube, and a free mapping service called Google Maps. Many of

these free services offer additional functionality if the user signs into their Google Account.

31.     In addition, Google offers an operating system ("OS") for mobile devices,

including cellular phones, known as Android. Google also sells devices, including but not limited

to laptops, mobile phones, and tablets. Users of Android and Google devices are prompted to

connect their device to a Google Account when they first turn on the device, and a Google

Account is required for certain functionalities on these devices.  As noted above, in Paragraph

29, Google has indicated that **WALSH**'s Google Account uses Android.

32.     Signing up for a Google Account automatically generates an email address at the

domain gmail.com. That email address will be the log-in username for access to the Google

Account.  **WALSH**'s email address and log-in username is matthew.renato.walsh@gmail.com.

33.     Google advertises its services as "One Account. All of Google working for you."

Once logged into a Google Account, a user can connect to Google's full suite of services offered

---

[1] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, also described below.

34.    Google provides email services (Gmail) to Google Accounts through addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through web browser or mobile application. Additional email addresses ("recovery," "contact," "forwarding," or "alternate" emails) can be associated with a Google Account by the user. Emails associated with a Google Account are preserved indefinitely, unless the user deletes them. However, as noted in Paragraph 39 below, even user-deleted communications or files may continue to be available on Google's servers for a certain period of time.

35.    Google Scholar provides a way to broadly search for scholarly literature across many disciplines and sources: articles, theses, books, abstracts and court opinions, from academic publishers, professional societies, online repositories, universities and other web sites. Google Scholar Profiles provide a way for authors to showcase their academic publications. As noted above, in Paragraph 29, Google has indicated that **WALSH**'s Google Account uses Google Scholar Profiles, and **WALSH** is known to have been employed in an academic setting during the relevant time period.

36.    Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact

13

information for that individual will be saved in the user's Google Contacts. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

37.    When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment. As noted above, in Paragraph 28, Google has indicated that the personal identifying information provided by **WALSH** during the registration of his Google Account is the same as personal identifying information provided by **WALSH** at various other times relevant to this investigation.

38.    Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

39.    Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a

communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

40.    Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity. As noted above, in Paragraph 29, Google has indicated that **WALSH**'s Google Account uses Google Chrome Sync.

41.    My Activity collects and retains data about searches that users conduct within their own Google Account or using Google Search while logged into their Google Account. My Activity also may track the websites visited while the Account is logged into the Google Chrome web browser, applications used by the Account on an Android device, and ads clicked while logged into the Account, among other data.  This search, browsing, and application use history is associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes them or opts in to automatic deletion of their location history every three or eighteen months. As noted above, in Paragraph 28, **WALSH**'s Google Account was created in 2011.

42.    Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides (Google's presentation

15

program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, up to a storage limit. Users can set up their personal computer or mobile phone to automatically back up files to Google Drive. Each user gets 15 gigabytes of space for free on Google's servers and may purchase more. Google Drive allows users to share stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google apps. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

43.      Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely, unless the user deletes them.

44.      Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages. If a user subscribers to Google's cloud storage service, Google One, they can opt to backup all the data from their device to Google Drive.

45.      As noted above, in Paragraph 29, Google has indicated that **WALSH**'s Google Account uses Google Drive, Google Keep and Android.

46.      Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location

Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like GPS latitude and longitude coordinates, and inferential location data, such as the inference that a Google Account is in Louisiana because it conducts a series of searches about places to eat in Louisiana and directions from one Louisiana location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. As noted above, in Paragraph 28, Google has indicated that **WALSH**'s Google Account was created in 2011, and as noted in Paragraph 29, Google has indicated that **WALSH**'s Google Account uses Location History.

47.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. For instance, given **WALSH**'s lack of stable residence following his eviction in December 2020, data about the location at which **WALSH**'s Google Account services were accessed and/or email communications were transmitted may provide direct evidence of the offenses under investigation.

48.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers like Google typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

49.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.  For example, in this case, the FBI is aware of certain threatening communications transmitted by **WALSH** via his Google Account matthew.renato.walsh@gmail.com, and the FBI is further aware that **WALSH** has deleted one or more emails, potentially of a similarly threatening nature. Any such records, among others, would constitute direct evidence of the offenses under investigation.

50.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant

time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the Account.  Here, the FBI is aware of at least two devices, an Android device and a laptop, which may have been used by **WALSH** to access his Google Account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

51.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement). Here, as noted above, the FBI is aware that **WALSH** has deleted email communications, which may be relevant to the offenses under investigation.

52.    Other information connected to the use of a Google account may lead to the discovery of additional evidence.  For example, emails and Internet activity can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

53.    For the reasons discussed herein, Google's servers are likely to contain stored electronic communications and information concerning the subscriber of the Account and their use of Google services.  In my training and experience, such information may constitute

evidence of the crimes under investigation including information that can be used to identify an account's user or users.

## **CONCLUSION**

54.    Based on the foregoing, I request that the Court issue the proposed search warrant.

55.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Google.  Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


_____
*Ryan Marten*
Ryan A. Marten, Special Agent
Federal Bureau of Investigation


Affidavit submitted by email/.pdf and attested to me as true and accurate by telephone, consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3), on the 9th day of day of April, 2021, at Baton Rouge, Louisiana.


_____
HONORABLE RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to information associated with **matthew.renato.walsh@gmail.com**

("the Account") that is stored at premises owned, maintained, controlled, or operated by Google

LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

I.      **Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), on March 25, 2021, with Google Reference Number 5562337, Google is required to disclose to the government for the Account listed in Attachment A the following information from **December 1, 2020 through the present**, unless otherwise indicated:

a.      All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.      Names (including subscriber names, user names, and screen names);

2.      Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

3.      Telephone numbers, including SMS recovery and alternate sign-in numbers;

4.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

5.      Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

6.      Length of service (including start date and creation IP) and types of service utilized;

7.      Means and source of payment (including any credit card or bank account number); and

8.    Change history.

b.    All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.    Records of user activity for each connection made to or from the Account, including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

d.    The contents of all emails associated with the Account, including stored or preserved copies of emails sent to and from the Account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

e.    All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (*i.e.* whether user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history;

f.    Google Scholar and Scholar Profiles, including any academic publications, associated with the Account;

g.    The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

h.    Records of communications pertaining to issues relating to the Account, such as technical problems, billing inquiries, or complaints from other users; records of contacts between the user and Google's support services, as well as records of any actions taken by Google or user as a result of the communications; and

     i.     All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, including: search queries and clicks; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

Google is hereby ordered to disclose the above information to the government within **10 days** of issuance of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of 18 U.S.C. § 875(c), those violations involving **MATTHEW WALSH a/k/a MATTHEW RENATO WALSH** ("**WALSH**") and occurring after **December 1, 2020**, including, for the Account listed on Attachment A, information pertaining to the following matters:

a.    Any threat or threats to injure, intimidate and/or kill any person or persons;

b.    Any preparatory steps or other indication of intent to carry out any threat or threats to injure, intimidate and/or kill any person or persons;

c.    Any reference to or involvement with the Federal Bureau of Investigation ("FBI") or any other federal agency and/or any individual agent or representative thereof;

d.    Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

e.    Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

f.    The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s); and

g.    The identity of the person(s) who communicated with the Account about matters relating to any threat or threats to injure, intimidate and/or kill any person or persons, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed

electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| | ) | Case No.  21-MJ -40 |
| INFORMATION ASSOCIATED WITH GMAIL ACCOUNT | ) | |
| MATTHEW.RENATO.WALSH@GMAIL.COM THAT IS STORED | ) | |
| AT A PREMISES CONTROLLED BY GOOGLE | ) | |
| | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Middle_____ District of _____Louisiana_____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

This Court possesses the authority to issue this warrant under 18 U.S.C. Sections 2703(c)(1)(A) and 2711(3)(A)(i) and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

**YOU ARE COMMANDED** to execute this warrant on or before _____April 23, 2021_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Richard L. Bourgeois_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____April 9, 2021 at 2:53pm_____

City and state:   Baton Rouge, Louisiana

*Judge's signature*

Richard L. Bourgeois, U.S. Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  21-MJ -40 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

**Property to Be Searched**

This warrant applies to information associated with **matthew.renato.walsh@gmail.com**

("the Account") that is stored at premises owned, maintained, controlled, or operated by Google

LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), on March 25, 2021, with Google Reference Number 5562337, Google is required to disclose to the government for the Account listed in Attachment A the following information from **December 1, 2020 through the present**, unless otherwise indicated:

a.      All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.      Names (including subscriber names, user names, and screen names);

2.      Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

3.      Telephone numbers, including SMS recovery and alternate sign-in numbers;

4.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

5.      Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

6.      Length of service (including start date and creation IP) and types of service utilized;

7.      Means and source of payment (including any credit card or bank account number); and

8.    Change history.

b.    All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.    Records of user activity for each connection made to or from the Account, including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

d.    The contents of all emails associated with the Account, including stored or preserved copies of emails sent to and from the Account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

e.    All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (*i.e.* whether user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history;

f.    Google Scholar and Scholar Profiles, including any academic publications, associated with the Account;

g.    The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

h.    Records of communications pertaining to issues relating to the Account, such as technical problems, billing inquiries, or complaints from other users; records of contacts between the user and Google's support services, as well as records of any actions taken by Google or user as a result of the communications; and

i.    All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, including: search queries and clicks; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

Google is hereby ordered to disclose the above information to the government within **10 days** of

issuance of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence and/or

instrumentalities of violations of 18 U.S.C. § 875(c), those violations involving **MATTHEW**

**WALSH a/k/a MATTHEW RENATO WALSH** ("**WALSH**") and occurring after **December**

**1, 2020**, including, for the Account listed on Attachment A, information pertaining to the

following matters:

     a.     Any threat or threats to injure, intimidate and/or kill any person or persons;

     b.     Any preparatory steps or other indication of intent to carry out any threat or threats to injure, intimidate and/or kill any person or persons;

     c.     Any reference to or involvement with the Federal Bureau of Investigation ("FBI") or any other federal agency and/or any individual agent or representative thereof;

     d.     Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

     e.     Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

     f.     The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s); and

     g.     The identity of the person(s) who communicated with the Account about matters relating to any threat or threats to injure, intimidate and/or kill any person or persons, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other

records and information disclosed pursuant to this warrant in order to locate evidence and

instrumentalities described in this warrant.  The review of this electronic data may be conducted

by any government personnel assisting in the investigation, who may include, in addition to law

enforcement officers and agents, attorneys for the government, attorney support staff, and

technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed

electronic data to the custody and control of attorneys for the government and their support staff for their independent review.